UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

AURLIEAS DANTE MCCLARTY,

       Petitioner,

v.                                     CASE NO. 6:12-cv-1752-Orl-31GJK

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

       Respondents.

_____/

**ORDER**

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. § 2254 (Doc. 1). Respondents filed a response to the petition in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases for the United States District Courts* (Doc. 15). Petitioner filed two replies to the response (Doc. Nos. 21 and 22), an addendum (Doc. 23), and a supplement (Doc. 28). Petitioner subsequently filed an amended petition (Doc. 38). Respondents filed a response to the amended petition (Doc. 43), and Petitioner filed a reply (Doc. 44) and an amended reply (Doc. 49).

Petitioner alleges twelve claims for relief in his amended habeas petition. For the following reasons, the petition for writ of habeas corpus is denied.

## I.     PROCEDURAL HISTORY

Petitioner was indicted on two counts of first degree murder with a firearm (counts one and two) and one count of robbery with a firearm (count three). (App. A at 17-18).

The State filed a notice of intent to seek the death penalty. *Id.* at 40. After a jury trial, Petitioner was convicted as charged. *Id.* at 705-10. The trial court held a penalty phase hearing, and the jury declined to sentence Petitioner to death for counts one and two. *Id.* at 731-32. The trial court sentenced Petitioner to consecutive terms of life in prison for counts one and two, each with a twenty-five year minimum mandatory term. *Id.* at 755-56. The trial court also sentenced Petitioner to 250.8 months in prison for count three. *Id.* at 757. Petitioner appealed, and the Fifth District Court of Appeal ("Fifth DCA") affirmed *per curiam* (App. E).

Petitioner filed a state habeas petition alleging ineffective assistance of appellate counsel and an amended supplemental petition (App. F). The Fifth DCA denied the petitions without discussion (App. G). Petitioner filed a second state habeas petition (App. H), which was also denied (App. I). Petitioner subsequently filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (App. J). The trial court summarily denied the motion (App. K). The Fifth DCA affirmed *per curiam* (App. M).

## II.   FACTUAL HISTORY

Prior to trial, defense counsel noted that there was an overwhelming presence of court security officers in the courtroom (App. B at 8, 12-17, 30-41). Defense counsel objected to the number of court security officers present. *Id.* at 56. The trial court overruled defense counsel's objection and concluded that the number of officers was not prejudicial to the defense. *Id.* at 59-60.

2

Trial commenced with the testimony of witness Ed Tamargo ("Tamargo"). *Id.* at 114. Tamargo, the general manager of a U-Haul store located on Alafaya Drive in Orlando, Florida, was traveling to a meeting when he stopped at a U-Haul store located on Orange Blossom Trail. *Id.* at 114-17. Tamargo explained that managers were encouraged to visit different U-Haul stores to learn how other stores operated. *Id.* at 130.

Tamargo did not observe any cars or people in the parking lot. *Id.* at 135, 147. Upon entering the store, Tamargo did not see any employees. *Id.* at 118-20. Tamargo heard a gurgling sound and saw victim Anne Culp ("Culp") lying on the ground. *Id.* at 121. According to Tamargo, Culp was choking on blood. *Id.* at 122. Tamargo reached for the phone to call 911 and saw the second victim, Phil Mumaw ("Mumaw"), on the other side of the counter. *Id.* at 123. Mumaw was unresponsive. *Id.* According to the medical examiner, both Culp and Mumaw died as a result of multiple gunshot wounds. *Id.* at 295-97, 305, 309-16. Rodney Baldwin, U-Haul's Market Company President, testified that he checked the store's cash registers and concluded $200 had been taken from the store. *Id.* at 189.

Wendy Ford ("Ford") processed applications for newly hired U-Haul employees and testified that the day prior to the crimes, she had processed an application submitted by Jonathan Kincaid ("Kincaid"). *Id.* at 203-04. Kincaid requested to work at the Orange Blossom Trail store, but instead he was hired to work at the West Colonial store. *Id.* at 205-06, 214. The application also indicated that Kincaid lived on Lake Debra Drive in Orlando, Florida. *Id.* at 213.

Holly Taylor ("Taylor") testified that she knew Petitioner as Jonathan Kincaid. *Id.* 483. Taylor lived with Petitioner at 2179 Lake Debra Drive. *Id.* at 431. Taylor was aware that Petitioner had been hired to work at a U-Haul store in Orlando. *Id.* at 438. Taylor testified that several days before the crimes were committed, Taylor drove Petitioner to Sanjay Brown's ("Brown") house, where she observed Petitioner purchase a .380 caliber firearm from Brown. *Id.* at 441-44. The day before the crimes were committed, Petitioner shot the gun at a shooting range without any problems. *Id.* at 444-47.

The following morning, after hearing a news report regarding the crimes, Taylor heard Petitioner state that he hoped the female victim died. *Id.* at 449-52. Petitioner also threw a bag of clothes and a pair of tennis shoes in a dumpster. *Id.* at 451-52. Taylor and Petitioner then went to a McDonald's near the U-Haul store. *Id.* at 453. Petitioner walked over to the U-Haul store to "see what was going on." *Id.* at 454-56. Petitioner later returned the firearm to Brown. *Id.* Petitioner also asked Taylor to call the hospital where Culp was being treated, and Taylor complied with the request. *Id.* at 475.

Javid Saddiq ("Saddiq") testified that he gave Brown a Colt .380 firearm because Brown was going to sell the firearm for $200. *Id.* at 369-70. Brown returned the firearm two to three days later because it allegedly was not working. *Id.* at 370-80. A few months later, Saddiq was contacted by police regarding the firearm. *Id.* at 373. Saddiq retrieved the firearm from his brother and turned it over to police. *Id.* at 373-74, 383-84.

Brown testified that his former coworker, identified as Kincaid, inquired about purchasing a firearm. *Id.* at 392. Brown gave Saddiq's firearm to Kincaid, and Kincaid

4

later returned it, claiming the gun was not operable. *Id.* at.393-97. Brown then gave the firearm back to Saddiq. *Id.* at 397. Matthew Conway ("Conway"), a firearms and tool marks analyst for the Florida Department of Law Enforcement, testified that the bullets and shell casings recovered from the victims and the crime scene were fired using the firearm police retrieved from Saddiq. *Id.* at 522-23, 526.

Detective Glen Gause ("Detective Gause") testified that as a result of his investigations, he learned that a call had been made to the U-Haul store the morning the crimes were committed. *Id.* at 581-82. The call was made from a phone number belonging to Taylor. *Id.* After making contact with Taylor and Petitioner, Petitioner admitted that he had called the store. *Id.* at 584.

Petitioner was arrested several months later, and Detective Gause questioned him regarding the crimes. *Id.* at 595-96. Petitioner waived his *Miranda*[1] rights and admitted that he purchased the firearm from Brown. *Id.* at 596-97. At a second police interview, Petitioner asked Detective Gause if he had ever killed anyone, and stated, "it's like you're in another world, you smell smoke, you can't believe what you did. . . did I really do this?" *Id.* at 600.

### III.   LEGAL STANDARDS

#### A.   Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Sec'y for Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id.* Whether a state court's decision was an unreasonable application of law must be assessed

6

in light of the record before the state court. *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (*per curiam*); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

## B.    Standard for Ineffective Assistance of Counsel

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[2] *Id*. at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689-90. "Thus, a court deciding an actual

---

[2]    In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

Likewise, it well established that a defendant has the right to effective counsel on appeal. *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984). Claims of ineffective assistance of appellate counsel are governed by the same standard applied to trial counsel under *Strickland. See Sairras v. Fla. Dep't of Corr.*, 496 F. App'x 28, 34 (11th Cir. 2012) (citing *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991)). When evaluating the prejudice prong of *Strickland*, the Court must first review the merits of the omitted claim to determine whether counsel's actions affected the outcome of the appeal. *See Heath*, 941 F.2d at 1132.

Counsel's performance will be deemed prejudicial if the Court concludes that "the neglected claim would have a reasonable probability of success on appeal." *Id.*

## IV.   ANALYSIS

### A.   Claims One, Three, Four, and Eight

Petitioner alleges in claim one that the trial court violated his right to due process and a fair trial by allowing additional court security officers in the courtroom (Doc. 38 at 5). Petitioner raised this claim on direct appeal (App. C). The Fifth DCA affirmed *per curiam* (App. E).

In claim three, Petitioner contends that trial counsel was ineffective for failing to move for a mistrial after the trial court improperly denied counsel's request for a finding that the need for additional security officers was an "essential state interest" (Doc. 38 at 2, 13-14). In claim four, Petitioner contends that trial counsel rendered ineffective assistance by destroying "favorable evidence" regarding the courtroom arrangement (Doc. 38 at 8-10, 13-15). In support of this claim, Petitioner contends that counsel photographed the number and placement of the court security officers but failed to make sure these photographs were part of the record. *Id.* These claims were raised in Petitioner's Rule 3.850 motion (App. J). The trial court summarily denied claims one, three, and four pursuant to *Strickland* (App. K at 5-6). The Fifth DCA affirmed *per curiam* (App. M).

Finally, in claim eight, Petitioner asserts that appellate counsel was ineffective for failing to raise these issues on appeal (Doc. 38 at 23-26). Petitioner raised this claim in his

state habeas petition (Doc. H). The Fifth DCA denied the claim without discussion (App. I).

Prior to the commencement of jury selection, Petitioner complained that there was an "overpowering presence of correctional facility officers inside the courtroom" (App. B at 8). The trial court noted that the correctional facility officers were treating Petitioner the same as they treated every person charged with the death penalty. *Id.* at 10. Defense counsel noted that there were five uniformed deputies in the courtroom and argued that it would make it "apparent to anyone who might be here that there is an extreme danger. . . ." *Id.* at 13. The courtroom deputy stated that any officers would be "scattered" around the courtroom or be seated in the back and not visible to the jurors. *Id.* at 14.

Later in the pre-trial proceedings, defense counsel noted that there were nine court security officers present in the courtroom. *Id.* at 30. The courtroom deputy noted that he did not have control over the corrections officers from the jail. *Id.* at 31. The courtroom deputy stated that normally there are two deputies and a trainee in the courtroom with the trial judge, and the jail had sent four corrections officers to the court. *Id.* The courtroom deputy determined that two of the corrections officers would be placed near the jury seats and two would be in the back corners of the courtroom. *Id.* at 31-32. Defense counsel stated that if the corrections officers were out of sight, he had no objection. *Id.* at 33. However, defense counsel noted that the overwhelming presence of security implied Petitioner was dangerous. *Id.* Petitioner also objected to the uniforms of the corrections officers. *Id.* at 37-40. The trial court stated that the officers wore green uniforms with a

10

patch on each shoulder. *Id.* at 40.

On the morning of trial, defense counsel again objected to the number of court security officers. *Id.* at 56-57. The trial court noted the objection, stating there were three standard courtroom security officers and four additional corrections officers wearing green/olive uniforms which did not "appear to be otherwise very noticeable." *Id.* at 58. Defense counsel stated that the officers were wearing "combat-type gear [with] two . . . ammunition clips on a large utility belt, firearms, radios, nightsticks. . . ." *Id.* The trial court overruled Petitioner's objections. *Id.* at 58-59.

Courtroom security will violate a defendant's constitutional right if the security measures are so inherently prejudicial that the measures deny a defendant the right to a fair trial. *See Holbrook v. Flynn*, 475 U.S. 560, 572 (1986); *Spivey v. Head*, 207 F.3d 1263, 1272 (11th Cir. 2000). In *Spivey*, the Eleventh Circuit concluded that the presence of eight uniformed guards in the courtroom was not so inherently prejudicial that it violated the petitioner's right to a fair trial. *Id.* at 1272-73.

Similar to *Spivey*, the presence of seven to eight uniformed court security officers did not render Petitioner's trial fundamentally unfair. The officers did not surround Petitioner; instead, they were "scattered" throughout the courtroom. *See Spivey*, 207 F.3d at 1272-73. The trial court noted that it was jail policy to have corrections officers in addition to the standard court security in death penalty cases due to the serious nature of the offenses. Petitioner has not demonstrated that the he was denied his right to due process or a fair trial.

Additionally, Petitioner cannot show that trial counsel's failure to preserve photographs of the court security officers resulted in prejudice. The record sufficiently details the number of officers and their clothing. There is no indication that had the state appellate court also observed photographs of the officers, it would have concluded differently. Moreover, trial counsel's failure to move for a mistrial did not result in prejudice because there is no indication that such a motion would have been granted. Finally, Petitioner has not shown that appellate counsel's failure to raise these claims on appeal resulted in prejudice because the claims did not have a reasonable probability of success on appeal.

The state court's denial of these claims was neither contrary to, or an unreasonable application of, clearly established federal law. Claims one, three, four, and eight are denied pursuant to § 2254(d).

**B.     Claims Two, Six, and Seven**

Petitioner alleges in claim two that the trial court denied his right to due process by allowing irrelevant and prejudicial statements at trial (Doc. Nos. 38 at 7, 38-1 at 7). Petitioner states that the trial court improperly allowed Detective Gause to testify that during a police interview, after waiving his *Miranda* rights, Petitioner asked the detective if he had ever killed anyone and said, "like you're in another world, you smell smoke, you can't believe what you did . . . wow, did I really do this" (Doc. 38-1 at 8-9; App B at 597-600). Petitioner maintains that this evidence was irrelevant and referred to a collateral

12

crime, therefore, it should not have been admitted (Doc. 38-1 at 9).[3]  Petitioner raised this claim in his *pro se* initial brief (App. D). The Fifth DCA *per curiam* affirmed (App. E).

In claim six, Petitioner asserts that trial counsel was ineffective for failing to move for a mistrial after the State presented this evidence at trial (Doc. Nos. 38 at 13; 38-1 at 17-18). Petitioner raised this claim in his Rule 3.850 motion (App. J). The trial court summarily denied the claim, concluding Detective Gause's testimony was relevant evidence and its probative value was not outweighed by its unfair prejudice (App. K at 8). The Fifth DCA affirmed *per curiam* (App. M).

In claim seven, Petitioner asserts that appellate counsel was ineffective for failing to argue on appeal that the trial court erred by admitting this evidence at trial (Doc. Nos. 38 at 15; 38-1 at 21-22). Petitioner raised this claim in his state habeas petition (App. H). The Fifth DCA denied the petition without discussion (App. I).

Generally, federal courts do not review a state court's admission of evidence in habeas proceedings. *Mills v. Singletary*, 161 F.3d 1273, 1289 (11th Cir. 1998) (citing *McCoy v. Newsome*, 953 F.2d 1252, 1265 (11th Cir. 1992)). A federal court "will not grant federal habeas corpus relief based on an evidentiary ruling unless the ruling affects the fundamental fairness of the trial." *Id.* (citation omitted). "A denial of fundamental fairness occurs whenever the improper evidence 'is material in the sense of a crucial, critical,

---

[3] Petitioner claims that when he made these statements to Detective Gause, he was not referring to the instant crimes but instead to a different incident where he was present when a friend was shot. *Id.*

highly significant factor.'" *Snowden v. Singletary*, 135 F.3d 732, 737 (11th Cir.1998) (quoting *Osborne v. Wainwright*, 720 F.2d 1237, 1238 (11th Cir.1983)).

Petitioner has not demonstrated that he is entitled to relief on these claims. Petitioner's statements to Detective Gause were relevant and admissible because they could be interpreted as an admission of guilt. §§ 90.401, 90.402, 90.803(18), Fla. Stat. Moreover, defense counsel was given the opportunity to cross-examine Detective Gause regarding the matter (App. B at 620-21). Detective Gause testified that in a later follow-up interview, Petitioner indicated that when he made the statement regarding gun smoke, he was actually referring to a separate or prior incident and not the instant case. *Id.*

Additionally, there is no indication that the admission of Petitioner's statements rendered the trial fundamentally unfair. The evidence presented at trial reflects that Petitioner purchased the firearm used to commit the crimes. *Id.* at 393-97, 441-42, 514, 522-23, 527. After hearing a news report regarding the crimes, Petitioner stated that he hoped victim Culp died. *Id.* at 449-52. Petitioner also threw out a bag of clothes and shoes, called the U-Haul store, returned to the store to learn more information regarding the investigation, and had Taylor call the hospital to learn whether Culp was alive. *Id.* at 451-56, 475.

Petitioner has not shown that the alleged error had a substantial or injurious effect on the jury in light of the evidence presented demonstrating his guilt. *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993). Furthermore, for these same reasons Petitioner

14

cannot demonstrate that appellate counsel's failure to raise this claim on direct appeal resulted in prejudice. Finally, defense counsel's failure to move for a mistrial did not result in prejudice because there was no basis to grant such a motion. Accordingly, these claims are denied pursuant to § 2254(d).

### C.    Claim Five

Petitioner contends that trial counsel was ineffective for failing to move for a mistrial after the trial court assisted the State in presenting its case to the jury (Doc. 38 at 12). In support of this claim, Petitioner argues that the trial judge improperly participated in the trial and demonstrated his bias against the defense by asking questions of several witnesses (Doc. 38-1 at 17). Petitioner raised this claim in his Rule 3.850 motion (App. J). The trial court summarily denied the claim pursuant to *Strickland* (App. K at 6). The Fifth DCA affirmed *per curiam* (App. M).

Florida courts have held that "[i]t is within the court's prerogative to question witnesses [w]hen required by the interests of justice or to clarify an issue." *Poe v. State*, 746 So. 2d 1211, 1213-14 (Fla. 5th DCA 1999) (internal quotation and citation omitted). However, a trial court's abuses its discretion if "it appears that the judge departs from neutrality or expresses bias or prejudice in his comments in the presence of the jury." *Id.* (quotation omitted).

The trial judge briefly questioned Tamargo regarding whether he saw anyone else in the store or observed any cars in the store parking lot (App. B at 135). Defense counsel strenuously objected at length to the questioning, arguing that any inquiry by the trial

court gave the appearance of bias and interfered with the defense trial strategy. *Id.* at 136-46. The court overruled the objection and granted defense counsel a standing objection. *Id.* The trial court later asked crime scene technician Karen Livengood ("Livengood") about whether the body she observed at the scene was male or female. *Id.* at 269.

Petitioner has not shown deficient performance or prejudice. Although counsel did not move for a mistrial, there is no indication that such a motion would have been granted. The trial court's questions elicited relevant information not brought out by the State or defense counsel and clarified the witnesses' testimony. The trial court did not depart from neutrality by taking on the role of the prosecutor nor did the judge express any bias when questioning these witnesses. *See Poe*, 746 So. 3d at 1215 (noting that the trial court engaged in "intense and sustained questioning" which "overshadowed the court's stated purpose of uncovering the truth" and instead took on the "role of co-prosecutor").

The state court's denial of this claim was neither contrary to, nor an unreasonable application of, *Strickland*. Claim five is denied pursuant to § 2254(d).

### E.   Claim Nine

Petitioner asserts that trial counsel was ineffective for failing to investigate Brown's competency after his mental health history was brought to light (Doc. 38-2 at 28). Petitioner maintains that Brown was exhibiting symptoms of schizophrenia and thus, was incompetent at the time of trial. *Id*. Petitioner raised this claim in his Rule 3.850 motion (App. J). The trial court summarily denied the claim pursuant to *Strickland*,

concluding that Brown's competency was not at issue (App. K at 5). The Fifth DCA affirmed *per curiam* (App. M).

In Florida, a witness is presumed competent to testify unless a party places competency at issue. *Wingo v. State*, 158 So. 3d 743, 745 (Fla. 2d DCA 2015). The competency of a witness is determined at the time a witness testifies. *State v. Karelas*, 28 So. 3d 913, 914 (Fla. 5th DCA 2009). Competency is based on "the capacity of a witness to recollect and communicate facts and appreciate the obligation to tell the truth." *Id.* (citation omitted).

Prior to testifying, Brown told the trial court that he suffered from schizophrenia that he controlled with medication (App. B at 388). Merely suffering from schizophrenia did not render Brown incompetent to testify. Brown testified that he gave his coworker a firearm. *Id.* at 392-97. Although Brown could not recall his coworker's name, there is no indication that it was due to his mental health. Brown testified that he was not "good with names." *Id.* at 395. Brown also pointed out that a large period of time had passed since the incident occurred. *Id.* at 398. Brown identified Petitioner as the coworker via a photograph composite. *Id.* at 398-99. Defense counsel impeached Brown on his ability to remember specific facts regarding the matter. *Id.* at 400-10, 419-22. It is clear from Brown's testimony that he was able to recollect and communicate facts and appreciate the obligation to tell the truth.

Petitioner has failed to demonstrate deficient performance because any investigation or objection on the part of counsel regarding Brown's competence would

have been futile. *See Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009) (the law does not require counsel to raise weak or nonmeritorious claims); *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (counsel is not ineffective for failing to raise a non-meritorious issue).

Moreover, Petitioner has not shown that prejudice resulted. Even if Petitioner had successfully challenged Brown's testimony, Saddiq testified that he gave Brown a firearm because Brown wanted to sell it to someone (App. B at 369-70). Additionally, Taylor testified that Petitioner purchased a firearm from Brown. *Id.* at 442-44. Thus, the jury heard evidence that Petitioner purchased the firearm that was later used to commit the crimes. Therefore, the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, claim nine is denied pursuant to § 2254(d).

### F.    Claims Ten and Twelve

Petitioner alleges in claim ten that trial counsel was ineffective for failing to object to the prejudicial comments made by the trial court regarding the court security officers (Doc. 38-1 at 30). In claim twelve, Petitioner contends that the trial court erred when it made these alleged prejudicial statements (Doc. 38-1 at 33). Petitioner raised these claims in his Rule 3.850 motion (App. J). The trial court denied claim ten on the merits and found claim twelve was procedurally defaulted because it should have been raised on direct appeal (App. K). The Fifth DCA affirmed *per curiam* (App. M).

Claim twelve was procedurally defaulted in the state court, and Petitioner has not demonstrated cause or prejudice that would excuse the default. *See Ferguson v. Sec'y Dep't*

*of Corr.*, 580 F.3d 1183, 1218 (11th Cir. 2009); *Harmon v. Barton*, 894 F.2d 1268, 1273 (11th Cir. 1990). Therefore, the Court is procedurally barred from reviewing claim twelve. However, in discussing claim ten, the Court must determine whether the comments made by the trial court amounted to error. Therefore, a discussion of both claims follows.

Petitioner takes issue with the following comments made by the trial court outside the presence of the jury:

| | |
|---|---|
| The Defendant: | What is the minimum with the officers? That's the only problem I have. I didn't see the purpose - - |
| The Court: | Do this for me. Go downstairs, get dressed out, come up here and then we'll settle it up here. I'll find out how many we're gonna have. There's gonna be some in the jury room; last time they were there, like, in the corners - - |
| The Defendant: | But that was the sheriffs [sic] of the Court. I don't have no problem with that. I just don't understand the correctional people. |
| The Court: | . . . It's because you've been charged with murder, because you're looking at the death penalty, because they've got rules. They're afraid you're gonna go nuts and kill another bunch of people. I mean, they don't know, they're just doing their thing. They're not trying to be personal with you in any way; they do the same thing with every death penalty person. |

(App. B at 9-10).

The comments made by the trial judge do not amount to judicial bias or prejudice. The trial court merely explained to Petitioner that the number of security personnel present was due to the serious nature of the charges and not based on any specific personal reasons. Therefore, Petitioner cannot demonstrate deficient performance or

prejudice. The state court's denial of claim ten was neither contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, claim ten is denied pursuant to § 2254(d).

> ### G.    Claim Eleven

Petitioner asserts that the trial court erred by failing to investigate Brown's competency (Doc. 38-1 at 31). Respondents allege that this claim is unexhausted (Doc. 43 at 4-5).

Pursuant to the AEDPA, federal courts are precluded, absent exceptional circumstances, from granting habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999). In order to satisfy the exhaustion requirement, "fairly present every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review." *Isaac v. Augusta SMP Warden*, 470 F. App'x 816, 818 (11th Cir. 2012) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Pope v. Rich*, 358 F.3d 852, 854 (11th Cir. 2004)); *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citations omitted). A petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998).

Petitioner raised this claim in his Rule 3.850 motion (App. J at 16). The trial court failed to address this claim during the Rule 3.850 proceedings (App. K). Petitioner did not raise this claim on appeal from the denial of his Rule 3.850 motion (App. L).

Petitioner's failure to specifically address this claim in his initial brief on appeal resulted in the abandonment of this claim. *See Coleman v. Sec'y, Fla. Dep't of Corr.*, No. 6:13-cv-1553-Orl-37GJK, 2015 WL 2412737, at *7 (M.D. Fla. May 21, 2015); *Wood v. Tucker*, No. 5:10cv200/RS/EMT, 2012 WL 2511428, at *7 n.10 (N.D. Fla. May 31, 2012). Therefore, claim eleven is unexhausted.

Moreover, the Court is precluded from considering this claim because it would be procedurally defaulted if Petitioner returned to state court. *Smith v. Sec'y Dep't of Corr.*, 572 F.3d 1327, 1342 (11th Cir. 2009) (citing *Snowden*, 135 F.3d at 736) ("[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to state-law procedural default, we can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief.")). Petitioner could not return to the state court to raise this claim because he has already filed a direct appeal and Rule 3.850 motion. Thus, Petitioner's claim is procedurally defaulted.

Procedural default will be excused only in two narrow circumstances: if a petitioner can show (1) cause and prejudice or (2) actual innocence. *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). Petitioner has not shown either cause or prejudice that would excuse any procedural default. Likewise, he has not shown the applicability of the actual innocence exception. A review of the record reveals that Petitioner is unable to satisfy either of the exceptions to the procedural

default bar. Accordingly, the Court is barred from reviewing the claim.[4]

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## V.   CERTIFICATE OF APPEALABILITY

This Court should grant an application for certificate of appealability only if the Petitioner "makes a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make such a showing "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Sec'y Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009). When a district court dismisses a federal habeas petition on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue only when a Petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*; *Lamarca*, 568 F.3d at 934. However, a prisoner need not show that the appeal will succeed. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

---

[4] Alternatively, this claim is without merit. As discussed in relation to claim nine, Brown was competent to testify. Furthermore, any error on the part of the trial court did not have a substantial or injurious effect on the jury in light of the evidence presented demonstrating Petitioner's guilt. *Brecht*, 507 U.S. at 638.

The Court concludes that Petitioner has not made the requisite showing in these circumstances. Petitioner is not entitled to a certificate of appealability.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.     The Amended Petition for Writ of Habeas Corpus filed by Aurlieas Dante McClarty (Doc. 38) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**. The Clerk of the Court shall enter judgment accordingly.

2.     Petitioner is **DENIED** a certificate of appealability.

3.     The Clerk of the Court is directed to close this case.

**DONE AND ORDERED** in Orlando, Florida, this 7th day of December, 2015.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies to:
OrlP-3 12/7
Aurlieas Dante McClarty
Counsel of Record